**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------x
**BRADLEY KRONEN**

                    **Plaintiff,**

          **- against-**                                    **Index No. 04 CV 3434**
                                                                  **(PKC)**

**YOUNG & RUBICAM, INC. d/b/a**
**BURSON-MARSTELLER, LLC**
**and BURSON-MARSTELLER ASSOCIATES, INC.,**        **Plaintiff's   Proposed   Jury**
**and LISA KOVITZ**                                 **Charges**

                    **Defendants.**
--------------------------------------------x


INTRODUCTION

          Plaintiff brings this case under the Family and Medical Leave Act of 1993, and under

the New York State Human Rights Law (the "HRL") and the New York City Human Rights

Law. All of these laws forbid and make illegal any action taken by an employer against an

employee based on the employee's serious medical condition or disability. I will tell you

about each of plaintiff's claims under these laws, the employer's defenses and the damages

that may be awarded if plaintiff proves his case.[1]

FMLA


          Under the FMLA, plaintiff was entitled to a total of 12 workweeks of leave during any

---

[1] Plaintiff requests that the Court give an abbreviated version of these jury charges as a pre-trial charge, "that jurors be familiarized with pertinent rules and procedures peculiar to the law and the courts and perhaps the matter at hand". See, People v. Newman, 46 NY2d 126, 412 NYS2d 860, cited on the page 27 of NY Pattern Jury Instructions, Vol. 1A (2006)

1

12-month period for a serious health condition. Plaintiff was given FMLA for a serious medical condition by defendant from February 14, 2003 through April 14, 2003. As of April 15, 2003, plaintiff was qualified for 20 more days of FMLA remaining, he would be entitled to take, in whole days or any portion of a day, providing it was for a serious health condition and he notified his employer as soon as practicable, either before or after the leave occurred.

The FMLA covers periods of incapacity periods due to a "chronic serious health condition." After he returned to work in April, 2003, plaintiff claims that he had a serious health condition under two separate FMLA definitions: (i) continuing treatment by a health care provider for a chronic serious medical condition and (ii) recovery from a serious medical condition. 29 CFR § 825.114 The FMLA regulations include in the definition of a chronic serous health condition a condition that involves periodic visits to a health care provider for treatment, which continues over an extended period of time and causes episodic - that is, occasional periods of incapacity- rather than a continuing period of incapacity. See 29   CFR. § 825.114(a)(2)(iii)(A), (B), and (C). Barnett v. Revere Smelting & Refining Corporation, 67 F. Supp. 2 d 378, 384 (SDNY 1999).

After his return to work, plaintiff claims that he still had a serious medical condition and that he was entitled to intermittent leave or a reduced leave schedule under the FMLA. Specifically, plaintiff asserts this claim for the period after his return to work on April 15, 2003, until his termination on August 25, 2003.

The FMLA regulations allow an employee to take intermittent leave, defined as "leave taken in separate blocks of time due to a single qualifying reason," or leave on a reduced schedule, defined as "a leave schedule that reduces an employee's usual number of working hours per workweek, or hours per workday, for a serious health condition. 29 C.F.R. § 825.203

The regulations state that "there is no limit on the size of an increment of leave when an employee takes intermittent leave or leave on a reduced leave schedule." 29 C.F.R. § 825.203 Thus, if an employee may take several minutes in a day or several days in a week if the employee has a qualifying serious medical condition as defined by the FMLA.

Sometimes the need for medical leave is foreseeable; sometimes it is not. It is expected that an employee seeking unforeseeable leave will give notice to the employer within no more than one or two working days of learning the need for leave, either before or after the leave, except in extraordinary circumstances where such notice is not feasible. (See e.g. Konipol, 2002 Westlaw 31618825, Southern District of New York, November 20, 2002.)

Adequate notice depends on whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.( Walton 424 Fed. 3d 481, Sixth Circuit 2005).

The employee does not need to mention the FMLA specifically to provide adequate notice. It is notice of the qualifying *reason* for leave and not notice of the statutory FMLA basis for that leave that must be communicated. (Slaughter, 64 F. Supp. 2d 319 at 326, Southern District of New York, 1999).

You may consider whether plaintiff's employer had prior knowledge of an existing medical condition to determine whether the employer was on inquiry notice of - that is should have asked plaintiff about - a potentially FMLA qualifying absence. (Jennings, 2003 Westlaw 22241511, (SDNY September 30, 2003))

Once employees give their employer notice that they have a medical condition which may require FMLA leave, it is the employer's responsibility to inquire further of the employee and obtain the necessary details of the leave *to be taken* by the employee, or,  the leave that has *been taken* by the employee in case of unforeseeable leave such as an episodic or occasional occurrence of a chronic condition, to determine whether it qualifies under the FMLA. (Lepore,

2005, Westlaw 3030839 (SDNY November 10, 2005), citing 29 C.F.R. Section 825.302(c). See also Darboe, 243 F. Supp. 2d 5 at 17, (SDNY February 7, 2003))

Defendants claim that plaintiff did not put them on notice of a medical condition that might qualify for FMLA leave after April 15, 2003 and that he was not entitled to such leave even if he had requested it.

You must determine whether plaintiff provided defendants with sufficient notice to trigger their duties under the FMLA.

Plaintiff claims that on each occasion when he needed FMLA qualifying leave for the days he would be absent from or late to work, such as on August 21, 2003, when he left a voice message with Lisa Kovitz that his back hurt, and August 22, 2003, when he left a message with Lisa Kovitz that he was immobile, and on August 25, 2003, the day that he was fired and that he was late to work because he was having problems walking, he gave notice of a need for FMLA leave as soon as practicable. Defendants claim that such notice was not made as soon as practicable. You will determine if plaintiff has demonstrated by the greater weight of the evidence that he gave notice of a medical condition that might qualify for FMLA leave and whether his notice was made as soon as practicable.

In determining whether defendants had notice of plaintiff's request to take time off for a serious health condition, you should consider all the evidence that you have heard, including defendant's knowledge of plaintiff's FMLA approved leave form February 14 through April 14, 2003, the conversations between plaintiff and Lisa Kovitz, Nikita Davis, Sandra Frederic and Sharon Cruickshank and the July 1, 2003 letter of Dr. Cindrich.

Employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies 29 C.F.R.§ 825.220(c) Brenlla v. LaSorsa Buick Pontiac Chevrolet, Inc., 2002 U.S. Dist. LEXIS 9358,*11 (D.N.Y. 2002); Merli v. Bill Communs., Inc.,

2002 U.S. Dist. LEXIS 4530, *16 (D.N.Y. 2002);Slaughter v. American Bldg. Maintenance Co., 64 F. Supp. 2d 319 , 329(S.D.N.Y. 1999)

You may consider whether the July 1, 2003 letter of Dr. Cindrich satisfied the requirement of notification of a medical condition that qualifies for coverage under the FMLA. Brumbalough v. Camelot Care Ctrs., Inc., 427 F.3d 996, 1003-1004 (6th Cir. 2005).

If plaintiff has met his burden of proof, you may find *both* the corporate defendants and Lisa Kovitz liable, or *either* of them liable. (See Johnson v. AP Products, 934 F. Supp. 625 at 627, 29, Southern District of New York 1996)

1.      Your verdict must be for the plaintiff if all of the following elements have been proved by the greater weight or a preponderance of the evidence:

*First,* plaintiff had a serious health condition because either because (i) he was receiving continuing treatment by a treatment by a health care provider for a chronic serious medical condition *or* because (ii) he was and recovering from a serious medical condition.

; and

*Second,* plaintiff was absent from or late to work as a result of that serious health condition; and

*Third,* plaintiff gave defendant appropriate notice of his need to be absent from work or late to work, either before or after the leave occurred; and

*Fourth,* defendant fired plaintiff; and

*Fifth*, plaintiff's absence from or lateness in reporting to work was a determining factor in defendant's decision to fire plaintiff.

However, your verdict must be for the defendant if any of the above elements has not been proved by a the greater weight of the evidence.

The fact that the defendant had no specific intent or purpose to deprive the plaintiff of his rights under the FMLA will not absolve the defendant from liability if the defendant in fact deprived

the plaintiff of those rights. <u>Freeman v. Foley</u>, No. 95 C 0209, 1996 U.S. Dist. LEXIS 3695, *19 (E.D. Ill. March 27, 1996) (magistrate's report).

You may find that plaintiff's absence from work was a determining factor in defendant's decision if it has been proved by the greater weight of the evidence that "[plaintiff's] termination was based in part on FMLA-covered absences, even in combination with [his] other absences" which were not covered by the FMLA. Barr v. New York City Transit Authority, 2002 U.S. Dist. LEXIS 2968, *15 (EDNY 2002).

## NYHRL & NYCHRL

### INTRODUCTION

Plaintiff also claims defendants discriminated against him based on his disability under the New York State Human Rights Law and the New York City Human Rights Law. Both the defendant corporation and Lisa Kovitz would be liable for discrimination if plaintiff proves his case. Patrowich v. Chemical Bank, 63 N.Y.2d 541, 542, 473 N.E.2d 11, 483 N.Y.S.2d 659 (1984)(individual supervisor liability state law);§   8-107 (1)(a) (agent of employer liable) Disability and Temporary Disabilities.

### DISABILITY

Both the State and City discrimination law have a unique definition of disability. You should follow the definition in the law, rather than some other meaning that you may understand by the term "disability" .

Under Section 296 of the Executive Law, the New York State Human Rights Law,  it is an unlawful, discriminatory practice for an employer to discharge  or to discriminate against an employee in the terms, conditions or privileges of employment because of an individual's disability. Disability is defined as 1) a physical, mental, or genetic medical impairment resulting from anatomical, physiological, or neurological conditions which prevents the exercise of a

normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or 2) a record of such an impairment or 3) a condition regarded by others as such an impairment, Executive Law Section 292(21). The City law defines disability as "any physical, medical, mental or psychological impairment, or a history or record of such impairment. §  8-102(16)( Definitions) Temporary disabilities, such as for example laryngitis, are considered disabilities under the NYHRL and the NYCHRL. See Romanello v. Shiseido Cosmetics Am. Ltd.,  2002 U.S. Dist. LEXIS 18538, 2002 WL 31190169, at *7 n.2 (laryngitis); 9 NYCRR §  466.11 (i)( "Temporary disabilities")

Plaintiff claims that he had disability as defined by the terms of State Law and City Law. Plaintiff has the burden of showing by the greater weight of the evidence that he had a disability as defined by State Law or City Law.

*First*, plaintiff claims that his medical condition qualified as a disability under the definition in the City Law because he had a physical impairment, and that the condition qualified under the definition in the State Law because at various times he was prevented by his impairment condition from the exercise of the normal bodily functions of sleeping and walking and the impairment manifested itself in pain in various places in plaintiff's body.

*Second*, plaintiff claims the independent basis for considering his condition a disability as defined by State Law because his physical impairment was certified by medically accepted clinical techniques by Dr. Cindrich in his FMLA certifications and in his letters.

*Third,* plaintiff claims the independent basis for considering his condition a disability as defined by both City and State law because he had a history or record of a disability as defined by those laws. You may consider the fact that defendant had given plaintiff  FMLA leave from February 24, 2003 through April 14, 2003 in determining whether plaintiff had a history or record of disability.

Defendants deny that plaintiff had a disability as defined by the City and State Law. Plaintiff must show by the greater weight or the preponderance of the evidence that he had a disability as defined by those statutes.

REASONABLE ACCOMMODATION

Plaintiff claims that he was entitled to a reasonable accommodation for his disability, by permitting him time off  when his disability was symptomatic,  but that he did not receive one. A "reasonable accommodation" is an action that permits a disabled employee "to perform in a reasonable manner the activities involved in the job ...provided, however, that such actions do not impose an undue hardship on the business."  An accommodation may include modified work schedules and job restructuring. N.Y. Exec. Law § 292(21-e) (listing examples of specific forms of accommodations, such as modified work schedules and job restructuring). See also the regulations set forth in 9 NYCRR §  466.11.

In order to show that defendants failed to make a reasonable accommodation, plaintiff must produce evidence that (1) he has a disability as defined by State or City law, (2) his employers had notice of the disability, (3) with a reasonable accommodation he could perform the essential functions of his job, and (4) the defendants refused to make reasonable accommodations for his needs.  Romanello v. Shiseido Cosmetics Am. Ltd.,  2002 WL 31190169, at *7 (quoting Mitchell v. Washingtonville Central Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999)).

The NYCHRL defines a reasonable accommodation as "such accommodation that can be made that shall not cause undue hardship"; The NYCHRL lists the factors that the employer must demonstrate by the preponderance or the  greater weight of the evidence: "The covered entity shall have the burden of proving undue hardship; the factors on hardship which may be considered are the nature and cost of the accommodation; the overall financial resources of the facility or the facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact

8

otherwise of such accommodation upon the operation of the facility; the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees, the number, type, and location of its facilities; and the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity. NYC Administrative Code § 8-102 (18).

The employer must engage in what is called an "interactive process" with an employee regarding a need for a reasonable accommodation. Young v. Central Square Central School District, 213 F. Supp. 2d 202, 213 (NDNY 2002); Jackan v. New York State Dep't of Labor, 205 F.3d 562, 566 (2d Cir. 2000)  When that process breaks down or does not occur and an employee claims that his  employer failed to "reasonably accommodate" his disability, there is a two-step process to determine whether the employer's failure to provide a proposed accommodation violates the law.  First, "the plaintiff bears the burden of proving . . . that an accommodation exists that permits him to perform the job's essential functions." Borkowski, 63 F.3d at 138. However, the employee is not required to suggest a specific type of accommodation in order to trigger the employer's obligation to investigate which reasonable accommodations, if any, might be appropriate. Worthington v. City of New Haven, 1999 U.S. If the interactive process breaks down, you will "look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary.'" Worthington, 1999 U.S. Dist. LEXIS 16104, 1999 WL 958627, at *13

If an employee provides information to an employer which gives notice that a reasonable accommodation might be required, the employer should engage in an interactive process, such as meeting with the employee who requests an accommodation, requesting information about the condition and what limitations the employee has, asking the employee what he or she specifically wants, show sign of having considered the employee's request, and offering and discussing available alternatives when the request is too burdensome. Taylor v. Phoenixville Sch. Dist., 174 F.3d 142, 162 (3d Cir. 1999).   Plaintiff claims that defendant did not engage in an interactive process. You must determine if defendant did or did not engage in such a process with plaintiff.

If you find that occasional absence from work, such as on August 21 and August 22, 2003, or lateness to work, such as on August 25, 2003, qualifies under the law as a reasonable accommodation, the burden shifts to defendants to show that no reasonable accommodation is possible (see Parker v Columbia Pictures Indus., supra at 332; Gilbert v Frank, 949 F.2d 637, 642 [1991])." Engelman V Girl Scouts-Indian Hills Council, Inc.,791 N.Y.S.2d 735,  2005 N.Y. App. Div. LEXIS 3112 (3rd Dept. 2005)

Defendant claims that arrival at 9:00 a.m. was an essential function of the job, and that plaintiff would not be performing an essential function of his job if he arrived at any time later than 9:00 a.m. Plaintiff claims that arrival at 9:00 was not an essential job function. You must determine based on the evidence you have heard about "how the job was actually performed in practice" whether arrival at 9:00 was an essential function of plaintiff's job. Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 140 (2d Cir. 1995) (citing Hall v. United States Postal Service, 857 F.2d 1073, 1079) In determining whether arrival at 9:00 each day was an essential function of the job, and whether a scheduling accommodation was reasonable, you should consider the totality of the circumstances including such factors as the written job descriptions, the amount of time that plaintiff was absent from or late to the workplace, the consequences of not requiring

10

the plaintiff to arrive at the workplace at 9:00 a.m., the punctuality of other employees in similar jobs, and whether the employer had granted a scheduling accommodation in the past. Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 121 (2nd Cir 2004) You may also consider evidence that plaintiff was punished more severely than others for similar infractions or deficiencies, that is whether any other employees were discharged for failing to arrive at 9:00 a.m. Nembhard v. Memorial Sloan-Kettering Cancer Ctr., 918 F. Supp. 784, 788 (D.N.Y., 1996)

Plaintiff is not required to produce direct evidence that he has been subject to discrimination.  Discrimination is rarely admitted and may be inferred from the existence of other facts. In order for plaintiff to recover, you must first find that he has proved that (i) his disability, or (ii) the employer's failure to engage in an interactive process,  or (iii) the employer's failure to make a reasonable accommodation was a motivating factor, that is a substantial reason,  for defendants' decision to fire him. If you find that plaintiff failed to prove this, then you should find for defendant's on plaintiff's claims under the State and City human rights laws. If you find that plaintiff  has proved by a preponderance of the evidence that (i) his disability, or (ii) the employer's failure to engage in an interactive process, or (iii) the employer's failure to make a reasonable accommodation disability or the failure to engage in an interactive process or to make a reasonable accommodation was a motivating factor in defendants' decisions, then defendants have the burden to prove by a preponderance of the evidence that defendants would have discharged plaintiff even if defendants had not taken those factors into account. If you find that defendants have proved that they would have fired plaintiff, for reasons other than (i) plaintiff's disability, or (ii) defendants' failure to engage in an interactive process, or (iii) the defendants' failure to make a reasonable accommodation, then you will find for defendants. If you find that defendants have not proved this, then you will find for plaintiff . PJI 9:2

CALCULATION OF DAMAGES

11

If you find that defendants have violated plaintiff's rights under the FMLA, or the New York State Human Rights Law, or the New York City Human Rights Law,  you should make separate findings concerning the damages to which plaintiff is entitled.  Under all three laws, you should consider the issue of back pay and benefits and front pay and benefits. Under the FMLA, you should consider the issue of liquidated or "double damages". Under the New York State Human Rights Law and the New York City Human Rights Law, you should consider the issue of compensatory damages or emotional suffering damages. Under the New York City Human Rights Law, you should consider the issue of punitive damages.  I will now describe the elements of each of these kinds of damages.

## BACK PAY AND BENEFITS

Back pay and benefits can be awarded under all three of the laws in this case. Back pay consists, basically, of the total amount of monetary compensation and benefits that the Plaintiff would have earned from the Defendants, since August 25, 2003, the date of Plaintiff's discharge, to today's date, as if the wrongful discharge by the Defendants had not occurred. You may award as actual damages an amount that reasonably compensates the plaintiff for any lost wages and benefits, including medical benefits, taking into consideration any increases in salary and benefits that the Plaintiff would have received had plaintiff not been discharged. Basically, you have the ability to make the Plaintiff whole for any wages or other benefits that he has lost as a result of his termination.[2]

---

[2] Lolard v. Pons, 434 U.S. 575, 98 S. Ct. 866, 55 L. Ed. 2d 40 (1978); Faris v. Lynchburg Foundry, 769 E2d 958 (4th Cir. 1985); Blim v. Western Electric Co., 731 E2d 1473 (10th Cir. 1984). See also Devitt, Blackmar and Wolff, Federal Iud/ Practice and Instructions §§ 104.05, 104.06, 104A.11 (1987 & Supp. 1993). Munnelli v. Memorial Sloan Kettering Cancer Center, 741 F.Supp. 60 (S.D.N.Y. 1990); Buckley v. Reynolds Metals Co., 690 F.Supp. 211, 218-20 (S.D.N.Y. 1988);    Pearce v. Carrer Corp. 966 F.2d 958 (5th Cir. 1992); Fariss v. Lynchberg Foundry, 769 F.2d 958 (4th Cir. 1985); Brunneman v. Terra International Inc., 975 F.2d 175 (5th Cir. 1992); Weaver v. Casa Callardo, 922 F.2d 1515 (llth Cir. 1991).

Do not deduct from your calculations of back pay any amounts for unemployment compensation.[3]

You will also calculate the amount to be awarded as pre-judgment interest, from the time of Plaintiff's discharge to the time of this trial.

## MITIGATION

The plaintiff must make a reasonable effort to minimize or reduce his damages for loss of compensation by seeking employment. This is called mitigation of damages. If you determine that the plaintiff is entitled to damages, you must reduce these damages by (1) what the plaintiff earned and (2) what the plaintiff could have earned by reasonable effort during the period from his discharge until the date of trial.

The defendants must prove that the plaintiff failed to mitigate his damages for loss of compensation.

If you determine that the Plaintiff did not make reasonable efforts to obtain another similar job, you must decide whether any damages resulted from his failure to do so. You must not compensate the plaintiff for any portion of his damages that resulted from his failure to make reasonable efforts to reduce his damages.[4]

## CALCULATION OF FRONT PAY

If you determine that the Defendants' decision to terminate Plaintiff was in violation of law, you should then proceed to consider the calculation of an award to Plaintiff of money damages in the form of front pay as well: Front pay consists, basically, of the total amount of all monetary compensation that the Plaintiff would have earned from the Defendants, from the date

---

[3]Promisel v. First American Artificial Flowers, 943 F.2d 251,258 (2d Cir. 1991) cert den'd, 112 S.Ct. 939, 117 L.Ed.2d 110(1992); Maxfield v. Sinclair International, 766 F.2d 788, 795(3d. Cir. 1985); Rasimas v. Michigan Dept. of Mental Health,714 F.2d 614, 627-28 (6th Cir. 1983) cert den'd 466 U.S. 930,104 S.Ct. 2152, 80 L.Ed.2d 537 (1984); Kauffman v. Sidereal Corp., 695 F.2d 343, 346-47 (9th Cir. 1982) per curiam.

[4]Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions § 105.41 (1987 & Supp. 1993); Coleman v. City of Omaha, 714 E2d 804, 808 (8th Cir. 1985).

of this trial forward to the date Plaintiff would have retired from Defendant or gotten reemployment at the same rate of pay and benefits as if the wrongful conduct by the Defendants against him had not occurred. Basically, you should make forward pay projections based on your calculations of Plaintiff's back pay.[5]

## LIQUIDATED DAMAGES UNDER THE FMLA

The FMLA provides an additional category of damages called "liquidated damages" or "double damages" - that is, you will double the amount of the amount of the sum you award for wages, salary, employment benefits, or other compensation denied or lost to plaintiff, plus interest, by reason of defendants' violation of the FMLA. However, if defendant proves by a preponderance of the evidence that it acted in good faith and that defendant had reasonable grounds for believing that its conduct was not a violation of the FMLA, then you should not award plaintiff liquidated damages. Section 2617(a)(1)(A)(iii) of the FMLA; Hoge v. Honda of Am. Mfg., 384 F.3d 238, 251 (6th Cir., 2004); Nero v Industrial Molding Corp. 167 F3d 921 (5th Cir. 1999). Palma v. Pharmedica Communications, Inc., 2003 U.S. Dist. LEXIS 21227 (D. Conn. 2003)

## COMPENSATORY DAMAGES UNDER THE NYHRL AND THE NYCHRL

The Plaintiff has alleged that, as a result of the Defendants' wrongful conduct under the New York State and New York City Human Rights Laws, he has suffered emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life. These are what are the law calls elements of compensatory damages. The Plaintiff has the burden of proving any compensatory damages by a preponderance of the evidence. If the plaintiff does not establish that he has experienced emotional pain, suffering, inconvenience, mental anguish or loss of enjoyment of life because of the Defendants' conduct, then he cannot recover compensatory damages. You may award compensatory damages caused by either by

---

[5]Maxfield v. Sinclair International, 766 E2d 788 (3d Cir. 1985); Blum v. Witco Chemical Corp., 829 E2d 367 (3d Cir. 1987). See also Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions §§ 104.05, 104.06, 104A.11 (1987 & Supp. 1993). Es59

defendants' discharge of plaintiff or by defendants failure to provide plaintiff with a reasonable accommodation, or both. See, Brady v. Wal-Mart Stores, Inc., 2005 U.S. Dist. LEXIS 12151 (E.D.N.Y. 2005).

If you determine that the plaintiff has proven by a preponderance of the evidence that he   has experienced emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, you may award him damages for those injuries. No evidence of the monetary value of such intangible things as pain and suffering has been, or needs to be, introduced into evidence. No exact standard exists for fixing the compensation to be awarded for these elements of damages. The damages that you award must be fair compensation—no more and no less.

When considering the amount of monetary damages to which the plaintiff may be entitled, you should consider the nature, character, and seriousness of any pain, suffering, inconvenience, mental anguish, loss of enjoyment of life the Plaintiff felt. You must also consider its extent or duration, as any award you make must cover the damages endured by the Plaintiff since the wrongdoing, to the present time, and even into the future if you find as fact that the proofs presented justify the conclusion that the Plaintiff's emotional stress and its consequences have continued to the present time or can reasonably be expected to continue in the future.[6] No medical testimony or other corroborating testimony is necessary for Plaintiff to establish his entitlement to compensatory damages. His testimony alone about his evidence that he suffered emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life is sufficient. [7]

---

[6]Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions §§ 104.05, 104.06, 104A.11 (1987 & Supp. 1993); 42 U.S.C. § 1981(b)(3); "EEOC Policy Guidelines on Damages Provisions of the 1991 Civil Rights Act," 8 FEP Manual 405:7091; Adams v. Doehler-Harvis (On Remand), 144 Mich. App. 764 (1985).

[7]Matter of Marcus Garvey Nursing Home, Inc., v. New York State Division of Human Rights, 209 A.D.2d 619; 619 N.Y.S.2d 106 (2nd Dept. 1994)( " It is well settled that a  complainant's testimony as to the mental anguish he suffered is sufficient to support such an award. Cullen v Nassau County Civ. Serv. Commn., 53 NY2d 492, 497;

PUNITIVE DAMAGES

In addition to the claims for damages already mentioned, you should consider whether the Plaintiff is entitled to punitive damages under the New York City Human Rights Law.

You may award these damages if you determine by a preponderance of the evidence that one or more of the defendants' acts were done with either (1) actual malice, which is nothing more or less than intentional wrongdoing—an evil-minded act, or (2) a wanton and willful disregard for the rights of another—in other words, a deliberate act with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of the act. You may award punitive damages based on defendants' discharge of plaintiff or on defendants' failure to provide plaintiff with a reasonable accommodation, or both. See, Brady v. Wal-Mart Stores, Inc., 2005 U.S. Dist. LEXIS 12151 (E.D.N.Y. 2005).

You may also award punitive damages if you find that  the defendants knew that they may have acted in violation of the New York City Human Rights Law. [8]

The Plaintiff has produced what he considers evidence of the Defendants' evil-minded intent or wanton and willful disregard for the plaintiff's rights under the New York City Human Rights Law.   You may find that one, all, or none of these examples indicate the defendants' evil-minded intent toward the plaintiff. Again, it is for you to determine the credibility, relevance, and significance of each piece of evidence and whether it supports the plaintiff's contention that punitive damages should be awarded.

If you determine that the facts justify an award of punitive damages, you should try to determine a fair, just, and reasonable amount for the Plaintiff under all the circumstances.

---

Matter of New York City Tr. Auth. v State Div. of Human Rights, 163 AD2d 315), and that expert medical or other corroborative testimony is not required (see,  Italiano v New York State Div. of Human Rights, 36 AD2d 1009, affd 30 NY2d 796)" (  Matter of Club Swamp Annex v White, supra, at 402-403)."

[8]Umansky v Masterpiece International Limited,  715 N.Y.S.2d 638 (2nd Dept. 2000).

Punitive damages are not intended to compensate a Plaintiff for injuries but rather to punish the Defendants and to prevent similar conduct in the future. Thus, if you award these damages, you should consider the Defendants' net worth and the impact of its paying that award.

Punitive damages must bear a reasonable relationship to the Plaintiff's actual injury. However, no single numerical equation has been made to easily link punitive to back pay or compensatory damages. In determining a reasonable relationship to the actual injury, you must consider all relevant factors. These include: (1) the impact or severity of the defendants' conduct, (2) the amount of time the defendants conducted itself in this manner, (3) the amount of back pay or compensatory damages, (4) the potential profits the defendants may have made from this conduct, (5) the attitudes and actions of the defendants' top management concerning the misconduct when it was discovered, (6) the effect of the damages award on the defendants' financial condition, and (7) any punishment the Defendants may receive from other sources.[9] In determining the effect of a punitive damage award on defendants' financial condition, you may consider the fact the defendant corporation has a worth _____.

Dated: New York, New York
        April 18, 2006

---

[9] Adapted from ICLE Model Jury Charges-Civil § 6.40; Levinson v. Prentice-Hall, Inc., 868 E2d 558 (3d Cir. 1989); Fischer v. Johns Mansville Corp., 103 N.J. 643, 673 (1986); Brown v. M&Mars, 883 E2d 505 (7th Cir. 1989); Knights Bridge Marketing Services, Inc. v. Promociones Proyectos, S.A., 728 E2d 572 (lst Cir. 1984); Stanojev v. Ebasco Services, Inc., 643 E2d 914, 924 n.7 (2d Cir. 1981); NationWide Check Corp., Inc. v. Forest Hills Distributors, 692 F. 2d 214 (1st Cir. 1982); Russo v. Trifri Krussman & Fishel, Inc., 837 E2d 40, 45 (1987); EEOC Reg., 29 C.ER. § 1602.14; Hicks v. Gates Rubber Co., 833 F. 2d 1406, 1419 (10th Cir. 1987); Benjamin v. United Merchants & Manufacturers, Inc., 873 E2d 44 (2d Cir. 1989); Dominic v. Consolidated Edison of New York, 822 F.2d 1249 (2d Cir. 1987); Rose v. Hearst Magazine Division, Hearst Corp., 814 E2d 491 (7th Cir. 1987); Burns v. Texas Refining, Inc., 890 E2d 747 (5th Cir. 1989); Conway v. ElectroSwitch Corp., 825 E2d 593, 597 (lst Cir. 1987); Verbraeken v. Westinghouse Electric, 881 F. 2d 1041 (11th Cir, 1989), See also Devitt, Blackmar and Wolff, Federal Jury/ Practice and Instructions §§ 104.07, 104A.12 (1987 & Supp. 1993).

Law Offices of Jonathan Weinberger
Attorneys for Plaintiff

_____/s/_____

BY:  Jonathan Weinberger
Jonathan Weinberger  (JW-2425)
880 Third Avenue, 13th Fl.
New York, New York 10022
(212) 752-3380